**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW WARCIAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-07426 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| ONE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, One, Inc. ("Defendant") hereby replies to the response of Plaintiff to Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as follows:

### INTRODUCTION

Plaintiff's response is remarkably free of citation either to supporting authority or to facts alleged in his complaint which support his position. In particular, he cites no authority for the proposition that Defendant, as opposed to the app user, was the initiator of the text message which his complaint puts at issue. Nor does he meaningfully address the cases or the *FCC's 2015 Order*, which support Defendant's position. Plaintiff's response instead relies upon a series of deflections and factual distinctions that are of no consequence to the issue of whether the user initiated the text message.

Plaintiff expends substantial energy attacking the utility of the After School app. His formless policy arguments are beside the point of Defendant's motion to dismiss, which raises the purely legal question of whether Plaintiff

has pled violations of the statutes he cites. Regardless, contrary to Plaintiff's contentions, the After School app does not tolerate cyberbullying, threats or any other content that threatens the safety of its online community. Following its original launch, the After School app enacted numerous safeguards in attempt to monitor or filter improper material, which was being posted. The After School App has partnered with numerous organization including: DoSomething.org (the largest teen non-profit for social change), YSA f/k/a Youth Service of America (a resource center which provides volunteer opportunities for young people), and the Crisis Text Line (a 24 hour support line for those in crisis). Moreover, the After School app monitors posts for language that is potentially dangerous, harmful or otherwise improper and it provides students with the power to remove content that they feel is inappropriate.

## ARGUMENTS

### I. Under The FCC's 2015 Order And Its Progeny, The App User Initiated The Text Message At Issue, Not Defendant.

Defendant's motion to dismiss is supported by court rulings issued both before and after the *FCC Order*, as well as that order itself. *In the Matter of Rules & Regulation Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (July 10, 2015) (hereinafter "*FCC Order*"). In the face of this consistent weight of authority Plaintiff cites the Webster's online dictionary. The *FCC Order* and the opinions from both before and after the *FCC Order* show that the user of the app was the initiator of the text message.

Plaintiff initially argues that Defendant grows its user base by "spam-viting," and he cites to an article which discusses how Glide spam-vited everyone in its app users' contact lists. Dkt#32 ("Resp."), p. 1, n. 1. While this may accurately depict Glide's conduct, it does not describe Defendant's. In the *FCC Order*, the FCC ruled that the Glide app was the initiator of text messages under the TCPA because Glide simply downloaded a user's contact list and then, on its own and without further action from the user, sent out pre-written invitational text messages *en masse* to everyone in the user's contact list. See *FCC Order* ¶¶34-35. The After School app is critically different, even as described by Plaintiff. Unlike Glide, the After School app does not download the user's contact list to send text messages to that entire list *en masse*. Indeed, Plaintiff concedes that the After School app does not do so, and that what actually happens is that a text message is only sent to about four students, each of which are specifically identified by the app user. Complaint ¶17; Resp. p. 4.

This difference and the other affirmative choices a user makes in this case are fatal to Plaintiff's TCPA claim. The FCC noted that a Glide user had "no discernible role" in sending the text messages because Glide "automatically sends invitational texts of its own choosing to every contact in the app user's contact list with little or no obvious control by the user." *FCC Order* ¶35. The FCC ruled that the text messages sent by Glide were "not reactive" because Glide was not acting in response to the user's conduct. *FCC Order* ¶35 and n.

126.  Indeed, the only action taken by a Glide user was to allow the app access to his/her contacts.

By contrast, the After School app is "reactive" because, like the user of the TextMe app (which the FCC held did not violate the TCPA[*see* Dkt#25, p. 5-6]), an After School app user plays a discernible role in causing the text to be sent. The user: 1) granted the app access to his/her Facebook account to verify whether the user went to the chosen high school;[1] 2) granted the app access to his/her contact list; and 3) chose specific people from his/her contact list that the user believed would verify that he/she attended the chosen high school. These affirmative choices make the After School app much more like TextMe and not like Glide. *See* Dkt#25, p. 5-10.

Plaintiff's attempt to distinguish *Cour v. Life360, Inc.*, 2016 WL 4039279 (N.D. Cal. July 28, 2016), similarly fails. Defendant pointed out in its opening brief that the plaintiff in *Cour*, who was represented by the same firm as the plaintiff in this case, had summarized the nature of her action in her complaint in almost exactly the same way as did Plaintiff in this case. ECF Doc. # 25, p. 7. The plaintiff in *Cour* alleged that the defendant never alerted the user that a text message would be sent after the user hit the invite button. ECF Doc. # 25-

---

[1] This allows the system to identify students who possibly attend the same high school as the user. The user's entire contact list is not listed in the verification process. The purpose of the verification process is to limit those joining a high school network to only those that actually attend the high school chosen. The user in this case attempted to join the After School app for Argo Community High School during the 2015-2016 school year. The user in this case chose the Plaintiff as the person who could verify for her. The government website for the City of Hickory Hills identifies Plaintiff as a student at Argo Community High School for the 2015-2016 school year.

3, ¶3. The plaintiff in *Cour* also claimed that the defendant had "tricked new users" and misled them to gain access to their contacts, so that a text message could be sent. *Id.* at ¶4. The plaintiff concluded in *Cour* that "[u]nbeknownst to the user", the defendant sent a text message to those identified in the user's contact list. *Id.* at ¶21. Plaintiff herein recycles the same allegations that were rejected in *Cour*. He claims that the After School app does not alert the user that the verification process would result in a text message being sent, Complaint ¶4, that the app used false pretenses in order to gain access to the users' contacts, so as to send the text messages, *Id.* at ¶5, and that "[u]nbeknownst to the user", text messages were sent to those students identified by the user. *Id.* at ¶17. Although Plaintiff ignores the aforementioned factual comparison between this case and *Cour* in his response, Plaintiff still argues that *Cour* is distinguishable. Plaintiff believes that *Cour* is distinguishable based on the fact that the app in *Cour* used the word "invite" in the process of the user initiating a text message, whereas the After School app uses the word "verify" in the process of the user initiating the text message, but that word variance is of no consequence to the issue of whether the user initiated the text messages. The premise of Plaintiff's argument remains the same as rejected by *Cour*.

Plaintiff's counsel argued in *Cour* that the defendant was the initiator of the text message because "critically", unlike the TextMe app, the Life360 app did not inform the user that a text message would be sent to invite some of the app user's contacts. *Cour v. Life360, Inc.*, 2016 WL 4039279, 16-cv-805, ECF

Doc. # 48, p.16 (N.D. Cal. July 28, 2016). The plaintiff used this fact to further argue that defendant took affirmative steps to "disguise" that a text message would be sent. *Id.* at p. 3. Opposing counsel also argued in *Cour* that, unlike with TextMe, the defendant pre-selected the text message recipients and users were required to deselect them to avoid sending text messages. *Id. Cour* rejected both of opposing counsel's arguments and held, in light of the FCC's distinction between Glide and TextMe, that:

> [t]he only affirmative step by the user of the Glide app is to allow Glide to access his or her contacts. Glide then decides to send invitational text messages to all such contacts; the user plays no role at all in deciding which of his or her contacts should receive an invitation. Here, by contrast, Life360 users choose which of their contacts should receive an invitation and then press an "invite" button before invitations are sent.
>
> Life360 is therefore much more similar to TextMe. The principal difference between the two applications is that Life360 is not alleged to inform the app user how the selected contacts will be invited—*i.e.*, whether they will receive a text message or be notified in some other way... This Court agrees that ***it makes no difference, for determining who "makes" a call under the TCPA, whether an application informs the user how invitations will be sent.*** The goal of the TCPA is to prevent invasion of privacy, and the person who chooses to send an unwanted invitation is responsible for invading the recipient's privacy even if that person does not know how the invitation will be sent.

*Cour*, 2016 WL 4039279, at *3-4 (emphasis added; citation omitted); *see also Glauser v. GroupMe, Inc.*, 2015 WL 475111, *6 (N.D.Cal. Feb. 4, 2015) (GroupMe user never asked app to send welcome text messages, and app never told user it would send such text messages; no TCPA liability because welcome texts were "triggered when GroupMe obtained phone numbers of newly added group members from the actions of the group creator, and the texts were

therefore "sent to plaintiff as a direct response to the intervention of ... [the] group creator."); *Wright v. Lyft, Inc.*, No. 14-cv-421, ECF Doc. # 63, at p. 5 (W.D. Wa. April 15, 2016) (opinion is attached at ECF Doc. # 25-2) ("it is not plausible" that app user who chose contacts did not know that chosen plaintiff would receive a text message as a result of selection); *Huricks v. Shopkick, Inc.*, 2015 WL 5013299, at *2 (N.D. Cal. Aug. 24, 2015) ("the FCC found that, even though a provider of an app controls the content of invitational text messages that are, in essence, advertisements for the app, the provider is not deemed to be the sender of those text messages where users of the app must make a series of 'affirmative choices' in order to cause the messages to be sent."). These cases demonstrate that contrary to Plaintiff's argument whether an app expressly tells a user that a text will be sent is not critical to TCPA liability.

What *is* critical is whether the app assigns to the user affirmative choices that lead up to the sending of a communication. In fact, the After School app provides, if anything, even more affirmative choices by the user than either the TextMe app from the *FCC Order* or the Life360 app at issue in *Cour* because: 1) unlike the TextMe app, the After School app does not even give users the option of selecting all of their contacts; and 2) unlike the Life360 app, the After School app does not provide users with preselected contacts who will be sent a text unless the user unselects them. As explained above, it is the After School app user that decides whether he/she wants to verify his/her high school attendance, and then it is the After School app user who chooses the people

who will provide his/her verification. Thus it is the user, and not the app, who initiates the messages.

Plaintiff tries to downplay these choices, and who makes them, by relying on the content of the messages. See Resp. p. 11. The notion that the content of the text message somehow makes the Defendant the initiator of the text message lacks merit because:

> the FCC found that, even though a provider of an app controls the content of the invitational text messages that are, in essence, advertisements for the app, the provider is not deemed to be the sender of those text messages where the users of the app must make a series of 'affirmative choices' in order to cause the messages to be sent.

*Huricks*, 2015 WL 5013299 at *2; see also *McKenna v. WhisperText*, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015) (user initiated call, even though user did not control content of text message); *FCC Order*, ¶37 (TextMe app did not initiate text message even though it controlled content).

Even if the content of the text message alters the analysis of whether the user initiated the text, Plaintiff's argument still fails because: a) the argument that users were somehow misled contradicts the properly pled allegations in the complaint; and b) the argument rests upon the implausible belief that Defendant cannot verify a user's high school by sending an invitation. Plaintiff was the recipient of a text message, and was not a user of the After School app. Accordingly his complaint does not contain any properly pled facts regarding how the verification process somehow misled or deceived the After School ap user into initiating the text *to him*. There is not a single paragraph of the complaint that uses any form of the words mislead or deceive. Paragraph 5 of

the complaint is the only paragraph which references the phrase "false pretenses." Complaint ¶5. Plaintiff not surprisingly does not cite paragraph 5 in his response, perhaps because it is an unsupported factual conclusion. Plaintiff's argument instead rests solely upon paragraph 17 and figure 5 [Dkt#32, p. 8], but, neither paragraph 17 nor figure 5 alleges that Defendant misled or deceived users.[2] Plaintiff respectfully is in no position to allege whether a user was misled or deceived because he openly concedes that he was never a user of Defendant's app.

Plaintiff's argument can also be rejected because it conflicts with *properly* pled allegations which show that users are not deceived or misled by the verification process. Figure 9 of Plaintiff's complaint shows that users are not deceived or misled when a text message is sent. Defendant cited figure 9 of Plaintiff's complaint four times in its motion to dismiss, but Plaintiff chose to ignore this allegation in his response. Plaintiff never addresses or even cites figure 9 of his complaint in his response brief, presumably because the allegations in figure 9 show that the users know that a text message will be sent as part of the verification process, so there is no way Plaintiff could even argue that users were misled or deceived.

---

[2] Plaintiff's allegations instead focus on how Defendant allegedly "spam-vites." Plaintiff appears to concede that Defendant does not "spam-vite" because she argues that the FCC did not make a bright line rule that only an app which spam-vites an entire contact list should be deemed the maker of the call. Dkt#32, p. 13. Further, such an argument that Defendant "spam-vites" contradicts Plaintiff's other argument that a user can verify by identifying four people who attend his/her high, which means only a maximum of four text messages would be sent. Plaintiff's spam-vite argument also contradicts the Plaintiff's allegation that text messages are only sent to those "students identified by the user." Complaint ¶17.

Plaintiff's argument also relies upon the implausible belief that a user's attendance at a certain high school cannot be verified by sending an invitation. This argument is wrong and defies logic because there are a variety ways to verify whether someone attends a certain high school.

Regardless, because the After School app requires a user to make affirmative choices before any message is sent, it falls on the TextMe side of the *FCC Order* rather than on the Glide side and therefore the user initiates the text. Accordingly Plaintiff's TCPA claim should be dismissed.

## II. Count II For An Alleged Violation of The ICFA Should Be Dismissed

### A. No Deceptive Act or Unfair Practice Under *Stern, Lee* or *Cahnman.*

Plaintiff's argument that Defendant should be considered the initiator of the call, on Plaintiff's best day, creates a legitimate disagreement between the parties as to whether the TCPA applies to the text message at issue. Count II should therefore be dismissed because no "deceptive act or practice" exists when a claim is based upon legitimate disagreement over statutory language.

Plaintiff incorrectly argues that the Court should consider Defendant the initiator of the text message under the TCPA. Dkt#32, p. 12. The TCPA does not define the term initiate. Plaintiff also does not and cannot cite a single opinion in support of his theory. Plaintiff's response brief simply attempts to deflect the authority cited by Defendant in support of its motion to dismiss. For the reasons stated above in section I, Plaintiff's unsupported argument should be rejected and the user of the app should be considered the initiator of the text message.

10

Regardless of how the Court rules on who initiated the text message, Plaintiff's argument at best creates a legitimate disagreement about whether Defendant initiated the text, and as noted above the legal authority favors Defendant's interpretation. As a result, the ICFA claim should be dismissed because there can be no ICFA claim when parties legitimately disagree about the effect of a statute with little case law. *See Stern v. Norwest Mortgage, Inc.*, 284 Ill. App. 3d 506, 512 (1st Dist. 1996) *aff'd,* 179 Ill.2d 160 (1997). In other words, Plaintiff fails to state a claim under the ICFA because "there must be a claim seated in deceptive acts rather than a reasonable difference of opinion as to the meaning of an act of the Illinois General Assembly." *Id.* at 513; *Cahnman v. Agency Rent-A-Car System, Inc.*, 299 Ill. App. 3d 54, 59 (1st Dist. 1998).

## B. Plaintiff Cannot State A Claim Under The ICFA Solely Based Upon A Violation Of The TCPA.

Plaintiff surreptitiously appears to acknowledge that he cannot state a claim under the ICFA based solely upon a violation of the TCPA. Dkt#32, p. 12. Count II therefore should be dismissed because an alleged violation of the TCPA does not qualify as a basis for stating a claim under the ICFA. Plaintiff also does not state a claim under the ICFA independent of whether there was a violation of the TCPA.

The allegations in Plaintiff's complaint show that the success of his ICFA claim is solely dependent upon the success of his TCPA theory. Plaintiff alleges that the text message sent to him violates Illinois public policy is because it is allegedly "unlawful under the TCPA." Comp. ¶55. Count II therefore fails

because it is undisputed that Plaintiff cannot state a claim under the ICFA by alleging that Defendant violated the TCPA. *See* Dkt#25, p. 12-13.

In order to state a claim under the ICFA, Plaintiff must allege facts which show that the ICFA was violated independent of whether there was a violation of the TCPA. Plaintiff's argument that he can independently assert a claim under the ICFA butchers the meaning of the word independent. Dkt#32, p. 13. Plaintiff must show that regardless of the TCPA the conduct at issue "independently" supports a claim under the ICFA.

*Martis* affirmed the dismissal of the plaintiff's ICFA claim because a violation of the Medical Practices Act did not establish a violation of the ICFA. *Martis v. Pekin Memorial Hospital, Inc.*, 395 Ill.App.3d 943, 950 (3d Dist. 2009). *Martis* thereafter independently analyzed whether defendant's conduct violated the ICFA regardless of the Medical Practices Act. *Id.* Plaintiff cites *Martis* to argue that he can independently state a claim under the ICFA, but he misconstrues the holding *Martis* because he fails to explain how the *Martis* reviewed the defendant's alleged conduct independent of the Medical Practices Act. Dkt#32, p. 13.

Similarly, the plaintiff in *People ex. rel. Daley v. Grady*, 192 Ill. App. 3d 330 (1st Dist. 1989) made a similar argument as Plaintiff now argues here. The plaintiff in *Grady* argued that a violation of the Real Estate License Act violates Illinois public policy and is therefore an unfair or deceptive practice which violates the ICFA. *Id.* at 332. *Grady* affirmed a dismissal of the plaintiff's ICFA claim because there is no indication in the ICFA to suggest that it was the

legislature's intent to create an ICFA claim based upon an alleged violation of the Real Estate License Act. *Id.* at 333. Although Defendant cited *Grady* in its opening brief and *Grady* rejects the argument Plaintiff makes here, Plaintiff's response brief makes no reference to *Grady*.

As a result, based upon *Martis* and *Grady* Count I should be dismissed because Plaintiff cannot state a claim under the ICFA independent of the TCPA.

### C. Plaintiff Does Not And Cannot Plead That He Suffered Any Actual Economic Damages.

Plaintiff admits that he must allege actual economic damages to state a cause of action under the ICFA. Dkt#32, p. 14. He also concedes that it is not enough to allege damages based solely on emotional distress or aggravation. *Id.* Plaintiff however does not explain how he allegedly suffered any out-of-pocket expense as a result of Defendant's conduct, so Count II must fail.

Plaintiff argues that *Wright* allowed a consumer protection claim to proceed under Washington law, so this Court should allow his ICFA claim to proceed. *Id.* at p. 15. *Wright* explains in great detail that Washington law only requires the plaintiff to show an injury instead of actual damages. Dkt#25-2, p. 11.

Unlike Washington law, the ICFA requires the Plaintiff to plead actual economic loss in order to state a private right of action under the ICFA. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 284 (2005). Further, actual damages may not be presumed under the ICFA. *See Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill.App.3d 485, 491 (2d Dist. 2001) (damages "may not be presumed under the

Consumer Fraud Act"). Consequently, Plaintiff's argument regarding *Wright* lacks merit.

Simply put, Plaintiff has not alleged any actual damages. Plaintiff fails to explain in his response how he has suffered out-of-pocket expense as a result of Defendant's conduct. *Frye v. L'Oreal USA, Inc.*, 583 F.Supp.2d 954, 957-58 (N.D. Ill. 2008) (measure of damages under ICFA is the amount plaintiff "is actually out-of-pocket by reason of the transaction."). Plaintiff instead chooses to ignore *Frye* and never refers to the phrase out-of-pocket expense, presumably because he has no out-of-pocket expense.

Plaintiff does mention *Nelson* in his response, but he fails to accurately describe the holding in *Nelson* wherein the Court dismissed plaintiff's ICFA claim. Dkt#32, p. 14-15. *See Nelson v. Ashford University, LLC*, 2016 WL 4530325, *3 (N.D. Ill. Aug. 29, 2016). The plaintiff in *Nelson* alleged that she suffered actual damages because the phone calls to her cell phone resulted in "increased usage of her telephone service, and diminished space for data storage on her cellular phone." *Id*. *Nelson* dismissed plaintiff's ICFA claim because the Court found that plaintiff did "not allege that the calls resulted in any monetary costs that would not have otherwise occurred, such as overage charges for telephone or data services." *Id*. In other words, *Nelson* dismissed the plaintiff's ICFA claim because she failed to allege how she suffered any out-of-pocket expense. Plaintiff likewise here does not make any such allegations.

Plaintiff appears to instead focus on how he allegedly suffered some injury. An alleged injury may provide Plaintiff with Article III standing but that

does not show that Plaintiff suffered actual economic loss, which he is required to allege to state a private cause of action under the ICFA. *Morris v. Harvey Cycle & Camper, Inc.,* 392 Ill.App.3d 399 (2009) ("actual damages" under the ICFA must arise from "purely economic injuries").

With that said, as Defendant stated in its opening brief, at least one court has found that damage allegations similar to those alleged by Plaintiff herein do not even pass the lower threshold of standing, let alone show actual economic damage. *See Smith v. Aitima Medical Equipment, Inc.,* 2016 WL 4618780, at *4-5 (C.D. Cal. July 29, 2016); Dkt. #25, p. 14. Plaintiff makes no attempt to even address *Smith* even though *Smith* held that the plaintiff failed to establish Article III standing because plaintiff's allegation that he suffered a depleted cell phone battery as a result of one call was a *de minimus* injury which failed to provide him with standing. *Id.* at *4. Plaintiff here alleges he received one text message. If such conduct is not sufficient to satisfy the lower requirement for an injury to establish standing, it cannot possibly be enough to show actual damages, which requires more than just a showing of an alleged injury.

WHEREFORE, Defendant One, Inc. respectfully requests that the Court grant its motion to dismiss Plaintiff's class action complaint with prejudice, and/or grant any other relief to the Defendant that is equitable and just.

Respectfully submitted on behalf of Defendant, ONE, INC.


*/s/ John P. Ryan*
David M. Schultz
Joel D. Bertocchi
John P. Ryan
Brandon S. Stein
HINSHAW & CULBERTSON, LLP
222 N. LaSalle, Suite #300
Chicago, IL 60601
Tel: 312-704-3000
jryan@hinshawlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2016, I electronically filed or caused to be filed with the Clerk of the U.S. District Court, Northern District of Illinois Eastern Division,the foregoing **Reply Brief In Support of Motion to Dismiss** by using the CM/ECF system, which will electronically serve such filing(s) upon all counsel of record.


*/s/ John P. Ryan*