**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW WARCIAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 7426** |
| | ) | |
| **ONE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Matthew Warciak filed suit on behalf of himself and others similarly situated

against One, Inc., the operator of a mobile application, alleging that One sent him and

others unauthorized text messages.  Warciak alleges that, in doing so, One violated the

Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the Illinois

Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2.  One

has moved to dismiss both claims.  For the reasons stated below, the Court denies

One's motion to dismiss Warciak's claim under the TCPA (count 1) and grants One's

motion to dismiss Warciak's claim under the ICFA (count 2).

### Background

One operates the "After School App", a social network application where high

school students can send messages anonymously.  After a user has downloaded the

application, the user is prompted to provide access to his or her location in order for the

application to find the user's school.  The application then directs the user to select a

school from a list of nearby schools.  Once the user has selected a school, the application indicates that the user must verify that he attends that school before the user can access the application's main function.  The application displays a button that reads "I'm a student verify now with Facebook."  Once the user selects this prompt, the application analyzes the user's Facebook profile.

The application then requires the user to complete a verification test.  The application presents a screen that indicates "We are having trouble verifying" and presents another button reading "Identify classmates in contacts to prove I'm a student." If the user selects this button, the application then notifies the user that it would like to access his contacts.  Once the user gives permission, another prompt states: "To verify you are a student, you must identify your classmates from the contacts."  If the user selects "OK", the application generates a list of people titled "Student Verification."  This list contains a mixture of the user's contacts and others unknown to the user.  The user must select at least four classmates from the list of contacts before the application finishes verifying the user.

The application then sends a text message to the selected students.  It does not tell the user that it is sending these texts.  The text message informs the recipients that they were "picked" by an anonymous boy or girl and provides a hyperlink to One's website.  The link also directs the recipient to One's Apple store page, where the recipient can download the application.

Warciak alleges that he received one of these text messages in June 2016. Warciak states that he did not use the application prior to receiving this message and that he did not provide his phone number to One.  Further, Warciak claims that users of

the application are not aware that the text messages are being sent, nor have they

authorized these text messages.  Warciak alleges that One never informs users that the

selected students will receive a text message, what the content of the message will be,

when the text message will be sent, or what number the message will be sent from.

Compl. ¶ 21.  Warciak further alleges that One intentionally fails to disclose this feature

to the user and fails to request permission from the user to send these messages.  *Id.* ¶

22.

Warciak therefore claims that One's transmission of these text messages to

himself and others violates both the TCPA and the ICFA.  Warciak also alleges that One

caused consumers actual harm by sending these unauthorized text messages.  *Id.* ¶ 28.

Specifically, Warciak claims that he and others have suffered injuries including a

violation of statutory rights, the diminished value and utility of their telephone equipment

and subscription services, the value of the time spent fielding unwanted text messages,

the wear and tear on their telephone equipment, the loss of battery life, and the

electricity costs required to recharge their phones.  *Id.* ¶ 29.

One has moved to dismiss both claims, arguing that it is not the "initiator" of the

text messages as required under the TCPA and that Warciak has failed to state a claim

under the ICFA.

**Discussion**

In considering a motion to dismiss for failure to state a claim, the court must

accept all well-pleaded allegations as true and draw all reasonable inferences in favor of

the plaintiff.  *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).  A complaint

must provide enough factual information to state a claim to relief that is plausible on its

face and raise a right to relief that is above the speculative level. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

**I.     TCPA claim**

Warciak alleges that One's transmission of the text messages violates section 227 of the TCPA.  Compl. ¶¶ 42–49.  Section 227(b)(1)(A) prohibits an individual from making any call, other than for emergency purposes or with the prior consent of the called party, using an automatic telephone dialing system.  47 U.S.C. § 227(b)(1)(A).  Specifically, the FCC's implementing rule states that "no person or entity may *initiate* any telephone call to the specified recipients." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("FCC Order"), 30 F.C.C.R. 7961, 7978 (2015) (internal quotation marks omitted).  The parties do not dispute that a text message qualifies as a "call" under the TCPA.  Instead, One argues that the users— and not One—initiated the text messages and therefore One cannot be liable under the TCPA.

The Supreme Court and the Seventh Circuit have yet to address the question of who, for purposes of the TCPA, initiates a text sent through a mobile application.  In 2015, the Federal Communications Commission (FCC) issued an order in which it considered this issue and determined that the operator of a mobile application can be— but is not always—the initiator of invitations sent from the application. *See generally FCC Order*, 30 F.C.C.R. 7961.  Final orders issued by the FCC are binding on this court under the Hobbs Act, 28 U.S.C. § 2341(1). *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010).  The Court therefore uses the *FCC Order* to guide its analysis.

## A.     The FCC Order

The FCC considered three different mobile applications:  YouMail, Glide, and

TextMe.  *The FCC Order*, 30 F.C.C.R. at 7981–84.  Each application sent out

invitational text messages on behalf of the application's users, and each operator

argued that the users themselves initiated the text messages for purposes of the TCPA.

*Id.*  Before considering each application separately, the FCC emphasized that FCC

regulations do not specifically define "initiate" but that there must be "some direct

connection between a person or entity and the making of the call."  *Id.* at 7980 (internal

quotation marks omitted).  The FCC then indicated that, in the context of mobile

applications, it will:

> look to the totality of the facts and circumstances surrounding the placing
> of a particular call to determine: 1) who took the steps necessary to
> physically place the call; and 2) whether another person or entity was so
> involved in placing the call as to be deemed to have initiated it.

*Id.*  Applying this standard, the FCC determined that the operator of Glide

initiated text messages sent from that application, whereas users initiated the text

messages sent by YouMail and TextMe.  *Id.* at 7981–84.

The FCC first considered YouMail, which enables users to respond to voicemails

with automatic text messages.  *Id.* at 7981.  In deciding that users initiate these texts,

the FCC noted that the user "determines whether to send the auto-reply text messages,

which categories of callers should receive auto-replies, how the user's name should

appear in the auto-reply, and whether to include a message with the auto-reply."  *Id.*

The FCC further stated that whether the users choose whether to send text messages

and their involvement in the process of creating and sending the messages are "key

factors in determining whether the app provider or the app user is the initiator of the call

for TCPA purposes." *Id.*

Next the FCC considered Glide, which provides users with video-messaging services. *Id.* at 7982. The plaintiff in that case alleged that Glide automatically sent text message invitations to all of a user's contacts unless the user affirmatively opted out. *Id.* The FCC concluded that, in this scenario, "the app user plays no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them" and therefore that the operator of Glide initiated the text messages. *Id.* at 7983.

Finally, the FCC considered TextMe, which enables users to send and receive text messages within the United States free of charge if both parties are users. *Id.* Because the appeal of TextMe depends on its number of users, TextMe enables users to send invitations via text message to join the application. *Id.* The FCC first noted that the users' lack of control over text message content weighed in favor of finding that the application operator initiated the text. *Id.* at 7984. The FCC ultimately concluded, however, that the user was required to make specific affirmative choices in sending the invitational text messages and that this made the user the initiator. *Id.*

### B.    The After School App

One argues that the After School App functions just like TextMe and therefore that its users initiate the allegedly unlawful text messages. Def.'s Mem. in Supp. of Mot. to Dismiss 9–10. But Warciak's allegations identify significant differences between the two applications, from which one plausibly could infer that One initiated the texts. In finding that TextMe users initiated the text messages, the FCC pointed to the series of affirmative choices that users were required to make before the application sent the

6

invitations. *FCC Order*, 30 F.C.C.R. at 7983–84. TextMe requires users to click a button labeled "invite your friends," to select whether to invite all friends or just a particular set, and to again choose to send the invitational text. *Id.* In contrast, Warciak alleges that users of the After School App are never informed that their actions will result in an invitational text message.

Screenshots of the After School App's verification process support Warciak's claim and highlight the differences between the After School App and TextMe. Compl. ¶¶ 12–22. These images show that the After School App's "student verification" process—which ultimately results in the allegedly unlawful text messages—never uses the word "invite" or any similar term suggesting that others will be contacted. *See id.* ¶¶ 12–22. The application first prompts the user with a button that says "I'm a student Verify now with Facebook." *Id.* ¶ 15. It then asks users for access to their contacts, stating "To verify you are a student, you must identify your classmates from the contacts." Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. A. Finally, the application asks users to "[i]dentify classmates in contacts to prove" that they are students. *Id.* ¶ 16. The screen on which the users select classmates is labeled "Student Verification." *Id.* ¶ 16. The affirmative choices made by the users of One's application are therefore significantly different from those made by users of TextMe. TextMe users are on notice that they are selecting contacts in order to send some type of invitational message, given the frequent use of the word "invite" throughout the application. After School App users have no such notice, however, given that no prompt used during the verification process suggests that it will result in invitational messages being sent.

The After School App also evidences other characteristics suggesting that One,

not the user, initiates the text messages. First, the application's users do not appear to have a choice whether to proceed through this verification process and ultimately to send the invitations, a factor that the FCC found persuasive when considering YouMail. *See FCC Order*, 30 F.C.C.R. at 7981. Further, users are not involved in the process of creating the message itself and have no influence over the message's content. *See id.* at 7984. It is true that the users of the After School App have more "involvement," literally speaking, than the users of Glide. Specifically, After School App users are at least required to make certain selections before the messages are sent. This is immaterial, however, if the users are unaware that their selections will lead to invitational text messages. Just as with Glide, it appears that users of the After School App play "no discernible role in deciding whether to send the invitational text messages." *Id.* at 7983.

One points to two cases from district courts in other circuits in which the courts have applied *The FCC Order* and concluded that users—and not the operator of the mobile application—initiated allegedly improper text messages under the TCPA. The After School App is noticeably different from the applications considered in those cases. In *Cour v. Life360, Inc.*, No. 16-cv-00805-THE, 2016 WL 4039279 (N.D. Cal. July 28, 2016), the district court considered an application that permits users to see other users on their "maps." *Id.* at *1. Similar to the process in TextMe—and unlike that which occurs in the After School App—Life360 users are required to press a button that says "Invite" before any messages are sent out. *Id.* The same is true for the application considered by the court in *Wright v. Lyft, Inc.*, a case from the Western District of Washington that One attaches to its motion. *See* Def.'s Mem. in Supp. of Mot. to

Dismiss, Ex. B. There, the plaintiff alleged that users were specifically prompted to access an "invite friends" feature of the Lyft application. *Id.* Thus One's attempt to align the After School App with these other applications is unsuccessful, as One's application never indicates to users that they are sending invitations. The users cannot be the initiators of these text messages for purposes of the TCPA if, as Warciak has alleged, the users were unaware that their actions would result in invitations.

Warciak has therefore sufficiently alleged that One initiated unwanted text messages sent via its mobile application in violation of the TCPA. The Court denies One's motion to dismiss count 1.

## II.    ICFA claim

Warciak alleges that the application's process of sending "unwanted" invitational text messages violates the ICFA's prohibition against unfair business practices. Compl. ¶¶ 50–60. In its motion to dismiss, One argues that Warciak has failed to state a claim under the ICFA for two reasons. First, One argues that an alleged violation under the TCPA cannot qualify as an unfair practice under the ICFA. Def.'s Mem. in Supp. of Mot. to Dismiss 10–13. Second, One argues that Warciak has failed to sufficiently plead damages as required by the ICFA. Def.'s Mem. in Supp. of Mot. to Dismiss at 13–15. Because this Court finds that Warciak has failed to plead actual damages, it is unnecessary to address One's first argument.

A plaintiff bringing a claim under the ICFA is required to show "he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739; *see also Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 365, 943 N.E.2d 23, 30–31 (2010). These damages must arise from "purely economic injuries." *Cooney*, 407 Ill.

App. 3d at 365, 943 N.E.2d at 31.  Warciak has alleged the following injuries:

> the cost associated with receiving the unwanted and unsolicited text messages, the diminished value and utility of [his] telephone equipment and telephone subscription services . . ., the measureable amounts of time lost answering and deleting the unwanted text messages, the wear and tear caused to their phone equipment, the loss of battery charge . . ., the loss of battery life, and the per-kilowatt electricity costs required to recharge their cellular phones as a result of such text messages.

Compl. ¶ 56.  Only the last two injuries—the loss of battery life and the electricity costs needed to recharge—can possibly qualify as the type of purely economic injury required under the ICFA; the others are ephemeral at best.  And these injuries are so negligible from an economic standpoint as to render any damages unquantifiable.  Though this Court has previously found that a plaintiff alleged actual damages in the case of unsolicited fax messages, *see Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2009 WL 2515594 (N.D. Ill. Aug, 17, 2009), Warciak's alleged injury is even less substantial than the loss of paper and ink required for a single fax.  The Court concludes that Warciak has failed to allege actual damages as required to bring a claim under the ICFA and therefore grants One's motion to dismiss count 2.

## Conclusion

For the foregoing reasons, the Court dismisses Count 2 of the complaint for failure to state a claim but denies defendant's motion to dismiss [dkt. no. 24] with respect to Count 1.  Defendant is directed to answer Count 1 by no later than January 6, 2017.  Rule 26(a)(1) disclosures are to be made by January 20, 2017.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  December 20, 2016

10