**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW WARCIAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-07426 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | Magistrate Judge Susan E. Cox |
| ONE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

NOW COMES the Defendant, ONE, INC., by and through its attorneys, Hinshaw & Culbertson LLP, and as and for its Answer to Plaintiff's Class Action Complaint, Defendant states as follows:

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### NATURE OF THE ACTION

1.    Defendant One operates a fast-growing social network for high school students. Through its mobile application called "After School" (the "After School App" or "App"), Defendant lets teenagers connect and share information anonymously with their classmates.[1]

**ANSWER:**    Defendant admits that it operates a social network for high school students through its mobile application called After School and that the App allows teenagers to connect and share information anonymously or not with their classmates, but Defendant denies the remainder of the allegations in paragraph 1.

---

[1]    *After School App*, https://afterschoolapp.com/about/ (last visited June 9, 2016).

2.     After users download the After School App, Defendant requires that they select the high school that they attend.  Defendant then asks users to grant it access to their Facebook profile and contacts to verify that the users attend the selected high school. Next, Defendant requires users to "verify" that they are students by selecting other attendees of their school from a list of purported students.

**ANSWER:**     Defendant admits that paragraph 2 attempts to characterize the process users went through in June of 2016 to download and join the App, but denies that the allegations provide a complete and accurate description of the process and denies the remainder of the allegations in paragraph 2.

3.     Unbeknownst to the users, Defendant programmed its After School App to cause text messages promoting the After School App to be created and sent to the individuals selected through the verification process. That is, Defendant's mobile application communicates with Defendant's servers and causes an automatic telephone dialing system - controlled by Defendant - to transmit text messages drafted by Defendant to the user's purported classmates.

**ANSWER:**     Defendant denies the allegations in paragraph 3.

4.     Notably, the user is never alerted or warned that the "verification" process is actually a text message advertising campaign for the benefit of Defendant. Defendant does not inform users that their contacts will be contacted by Defendant to the join Defendant's social network. Nor does Defendant inform users that the method of contact will be via text message.

**ANSWER:**     Defendant denies the allegations in paragraph 4.

5.     Instead, Defendant gains access to users' contacts under false pretenses (e.g., to "verify" attendance at a high school) and then sends unwanted text messages to those contacts.

**ANSWER:**     Defendant denies the allegations in paragraph 5.

131579968v1 0990433

6. Because Defendant made (or directed to be made on its behalf) unauthorized text message calls to the cellular telephones of consumers throughout the country - without prior consent-it violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 50511, *et seq*.

**ANSWER:** Defendant denies the allegations in paragraph 6. In further answer, the Court granted Defendant's motion to dismiss the alleged violation of the Illinois Consumer Fraud Act, so no answer is necessary to this portion of the allegation.

7. The TCPA was enacted to protect consumers from unsolicited telephone and text message calls, exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiff nor the other members of the putative Class ever provided Defendant with their prior express consent to be called. By making the text message calls alleged herein, Defendant caused Plaintiff and the other members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls.

**ANSWER:** Defendant denies the allegations in paragraph 7.

8. In response to Defendant's unlawful conduct, Plaintiff filed this instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text messaging activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, actual damages, costs, and reasonable attorneys' fees.

**ANSWER:** Defendant admits that paragraph 8 attempts to summarize Plaintiff's claim, but Defendant denies the allegations in paragraph 8.

### PARTIES

9. Plaintiff Warciak is a natural person and citizen of the State of Illinois.

3

131579968v1 0990433

**ANSWER:**   Defendant after reasonable investigation currently lacks knowledge and information to form a belief about whether Plaintiff is a citizen of Illinois.

10.   Defendant One, Inc., is a Delaware corporation with its principal place of business located at 10 Cyril Magnin, Apartment 506, San Francisco, California 94102. One, Inc. does business throughout the United States and the State of Illinois, including in Cook County.

**ANSWER:**   Defendant admits that it is a Delaware corporation with its principal place of business located in San Francisco, California, but Defendant denies the remaining allegations in paragraph 10.

## JURISDICTION AND VENUE

11.   The Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209(b)(4) and venue is proper because the Defendant is a corporation that conducts business in Illinois and because Plaintiff Warciak resides and received the unlawful text messages in Cook County.

**ANSWER:**   Defendant does not contest venue, but Defendant denies that the Illinois Code of Civil Procedure provides this Court with subject matter jurisdiction and Defendant denies that Plaintiff has Article III standing.

## COMMON FACTUAL BACKGROUND

12.   Defendant operates a large social network for high school students where they can communicate and connect anonymously. Through its mobile application, the After School App, high school students "can share openly and honestly, without fearing judgment or ridicule."[2] Defendant claims that its After School App has millions of students who attend more than 20,000 schools in the United States.[3]

---

[2] *After School App,* supra.
[3] *Millions of teens are using a new app to post anonymous thoughts, and most parents have no idea,* http://wpo.st/BMWe1 (last visited June 9, 2016) (describing the After School App as "a smartphone app to anonymously share their deepest anxieties, secret crushes, vulgar assessments of their classmates and even violent threats, all without adults being able to look in.")

4

**ANSWER:** Defendant admits that it operates a social network for high school students where they can communicate and connect both anonymously or not through its mobile application called After School. Defendant also admits that the App has millions of users who attend more than 20,000 schools in the United States. In further answer, Defendant admits that high school students "can share openly and honestly, without fearing judgment or ridicule", but Defendant denies that this provides a complete and accurate description of the App and denies the remainder of the allegations in paragraph 12.

13. Defendant distributes its After School App in the Google Play and Apple App Store. After users download the App for the first time, Defendant requests access to users' location to find nearby high schools. *See* Figures 1 and 2.





**(Figure 1.)**　　　　　　　　**(Figure 2.)**

**ANSWER:** Defendant admits that its App is distributed in both Google Play and the Apple App store. In further answer, Defendant admits that in June of 2016 a user would see figures 1 and then 2 after downloading the App, but Defendant denies the remainder of the allegations in paragraph 13.

131579968v1 0990433

14.  Once a user has agreed to share their location with Defendant, Defendant directs them to select a school from a list of nearby high schools. *See* Figure 3, on the following page. When a user selects a school, he or she is informed that they must verify that they are a student before Defendant grants access that school's feed (i.e., where classmates post and share information).

**ANSWER:**  Defendant admits that if the user agrees to share their location with the Defendant, the user selects the high school which the user attends and that a user's high school attendance needs to be verified before the user can join the high school feed. In further answer, Defendant admits that the remainder of the allegations in paragraph 14 attempt to summarize the verification process, but Defendant denies that allegations in paragraph 14 accurately and completely portray the verification process and denies the remainder of the allegations in paragraph 14.

15.  Defendant's purported verification process is typically a two steps. First, Defendant prompts the user for access to their Facebook profile information. *See* Figure 4. Through Facebook, Defendant utilizes a proprietary system to determine whether the user is a student at the school they select (e.g., perhaps by looking for Facebook friends of students already verified as being students of that high school).

131579968v1 0990433



**(Figure 3.)**



**(Figure 4.)**

**ANSWER:**    Defendant admits that after the user grants the App access to the user's Facebook, Defendant uses a propriety system to determine whether it can verify the user attends the selected high school, but Defendant denies the remainder of the allegations in paragraph 15.

16.    Second, Defendant requires that the user complete a verification test where the user must "Identify classmates in contacts." *See* Figure 5, on the following page. For this test, Defendant presents a list of the people where the user is to "identify students" of their previously selected school. *See* Figure 6. Mixed in this list of people is a number of the user's actual contacts and a number of fictitious persons or persons unknown to the user. Ostensibly, if a user selects a number of the fictitious students, they would fail the verification test. However, to the pass the test, the user simply has to select *any* of his or her contacts – Defendants seemingly does

7

not require "identified students" to actually be students of the selected high school. Defendant requires that the user select at least four "students" before it finishes "verifying" the user.



**(Figure 5.)**      **(Figure 6.)**

  **ANSWER:**  Defendant admits that some users may identify classmates in their contacts to complete the verification process, but Defendant denies the remainder of the allegations in paragraph 16.

  17.  Unbeknownst to the user, however, Defendant sent text messages to the purported students identified by the user. That is, Defendant used the guise of "Student Verification" to obtain contact information of tens of thousands of high school students to whom Defendant then markets and advertises.

  **ANSWER:**  Defendant denies the allegations in paragraph 17.

  18.  Specifically, Defendant programmed its After School App to transmit the phone numbers of "identified students" to Defendant's servers. From there, Defendant routes the phone

8

numbers to its text messaging system and creates a text message to be sent to the "identified students"

**ANSWER:**     Defendant denies the allegations in paragraph 18.

19.    Defendant inserts each contact's name into a text message it previously drafted. *See* Figure 7.   Included in each text message is a short message informing the "identified student" that they were "picked" by an anonymous "boy" or "girl", along with a "love emoji (i.e., ) and an automatically generated hyperlink to Defendant's website.  *See id*.  Each hyperlink directs whoever clicks on it to Defendant's website and then to its Apple App storage page, where the application can be downloaded



(Figure 7.)

**ANSWER:**     Defendant admits that a text message may be initiated by the user to the student identified by the user, but Defendant denies the same text message is sent to everyone, denies that each text message contains a hyperlink to its website and then to the Apple App storage page and denies the remainder of the allegations in paragraph 19.

9

20.     When Defendant has completed drafting the text message, it routes the text message to its (or its agent's) systems for transmission. There, Defendant causes the message to be sent to the "identified student's" phone number from a telephone number operated and/or controlled by Defendant.

**ANSWER:**     Defendant admits that it may draft the text message and the text message comes from telephone number associated with Defendant once the text is initiated by the user, but Defendant denies the remaining allegations in paragraph 20.

21.     Only Defendant and its agents have access to Defendant's text messaging system. Defendant programmed its system to draft text messages based on various parameters and variables.  Defendant programmed its system to send drafted text messages based upon timing rules set by Defendant with parameters and variables known only to Defendant. That is, Defendant  has full control over the content of the text message, whether a text message will be sent at all, and-if a text message is to be sent- when it will be sent (e.g., immediately after a person is "identified" as a "student," several minutes later, or hours later).  And, even after a contact is "identified" as a "student," Defendant never informs the user attempting to be verified that a text message will sent, what the content of message will be (e.g., he or she is never informed that a suggestive "love" emoji will be included), when the text message will be sent (e.g., 1:00 a.m. or during business hours), nor from what phone number the message is sent. Furthermore, Defendant does not inform the user that the contacts will be prompted  to join the After School social network by Defendant via telephone at all (i.e., no phone numbers or email addressed  are displayed, and users are not informed of invite methodology).

**ANSWER:**     Defendant denies the allegations in paragraph 21.

131579968v1 0990433

22.     Defendant's failure to inform users is intentional. Defendant designed its user interface so that users believe they are verifying their identity by selecting classmates from their high school. Defendant knows that consumers do not want or like when companies send unauthorized text messages en masse to their friends and family, which is why it fails to disclose that (and obtain permission for) it transmits text message invitations to users' contacts. Through its omissions, Defendant attempts to stimulate growth for social network by gaining access to high school student's contact information to which they would not otherwise have.

**ANSWER:**     Defendant denies the allegations in paragraph 22.

23.     Consumers who have received unauthorized text messages from Defendant have regularly complained about Defendant's "text-spam." *See* Figures 8 and 9.





**(Figure 8.)**                                    **(Figure 9.)**

**ANSWER:**     Defendant admits that figure 9 shows that users know that a text message will be sent to persons that the user identifies in the verification process, but Defendant denies the remaining allegations in paragraph 23.

24.     Unfortunately, Defendant ignored these complaints because it designed and programmed its mobile application and systems with one thing in mind: to quickly grow its network of users. By accessing data from existing users, Defendant was undoubtedly able to

131579968v1 0990433

solicit exponentially growth through its spam text messaging mechanism. Had users known that text messages would be sent, Defendant's growth would have slowed.

**ANSWER:**    Defendant denies the allegations in paragraph 24.

25.    The marketing technique employed by Defendant is commonly known as "spam-vitting" or "growth hacking," and is used by mobile app developers (like Defendant) to quickly gain a larger user base for the purpose of inflating their valuation and attracting investors.[4] Earlier this year, Defendant raised over $16 million in venture funding only months after its application was removed from the Apple App Store due to concerns that it facilitated student bullying. There is little doubt that such a windfall in funding so soon after the application's rocky start has been accompanied by an increased pressure to grow the platform.

**ANSWER:**    Defendant admits that it raised money from investors who believed in the App, but Defendant denies the remaining allegations in paragraph 25.

26.    The number of text messages Defendant sent, their generic advertising content, and their programmable nature indicates that it used an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention). And Defendant made, or had made on its

---

[4] *Video Texting App Glide Is Going "Viral," Now Ranked Just Ahead Of Instagram In App Store / Tech Crunch*, htpp://techcrunch.com/2-13/07/24/video-texting-app-glide-is-going-viral-now-ranked-just-ahead-of-instagram-in-app-store/(last visited June 9, 2016) (Reporting about a moibile app called "Glide" where its "viral" growth may be manufactured, even if not directly paid for. App Store reviews are filled with users who had unwittingly spam-vited everyone in their address book to Glide. The app, by default, checks all your contacts which you then need to uncheck if you don't want to send out invites to everyone. Plus, the pre-written message the app uses something along the lines of "I've got something to show you on Glide" making it should like there's content waiting – not just an invite to use the app.")

131579968v1 0990433

behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers.

**ANSWER:**     Defendant denies the allegations in paragraph 26.

27.     But while Defendant made, and continues to make, these unauthorized text message calls to consumers to solicit them to register for its social network, it never obtained recipients' consent to do so.  Moreover, none of Defendant's promotional text messages provided a reasonable opportunity for the recipient to opt out of receiving future promotional text messages.

**ANSWER:**     Defendant denies the allegations in paragraph 27.

28.     Through its conduct, Defendant has caused consumers actual harm by making the unauthorized text message calls at issue. Plaintiff and members of the Class were not only subjected to the aggravation that necessarily accompanies the receipt of unauthorized text message calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such unauthorized text message calls.

**ANSWER:**     Defendant denies the allegations in paragraph 28.

29.     Moreover, Plaintiff and members of the Class suffered injuries in the form of invasions of privacy and violations of their statutory rights, the monies paid to receive Defendant's unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription services (i.e., the value of such equipment and services is higher when unencumbered  by repeated and harassing text message calls), the amount of time lost answering  and fielding the unwanted telemarketing text messages, the wear and tear on their telephone equipment, the loss of battery (which becomes diminished  with each incoming phone

call), the loss of battery life (which has a finite number of charging cycles), and the electricity costs required to recharge their cellular phones.

> **ANSWER:**    Defendant denies the allegations in paragraph 29.

### FACTS SPECIFIC TO PLAINTIFF WARCIAK

30.    On June 6, 2016, Defendant sent a text message from (415) 855-2391 to Plaintiff's telephone number. *See* Figure 10.



**(Figure 10.)**

> **ANSWER:**    Defendant denies the allegations in paragraph 30.

31.    Plaintiff was not a user of the After School App and Plaintiff did not provide his cellular telephone number to Defendant prior to receiving the text message. As such, Plaintiff did not provide any form of prior express consent to receive text messages from Defendant.

> **ANSWER:**    Defendant after a reasonable investigation currently lacks knowledge and information to form a belief about whether Plaintiff was not a user, but Defendant denies the remaining allegations of paragraph 31.

32.    Defendant's intrusive text messages adversely affected Plaintiffs right to privacy.

> **ANSWER:**    Defendant denies the allegations of paragraph 32.

33.    Defendant was and is aware that the above-described text message calls were being made on a widespread basis, and that the text message calls were being made to consumers who had not consented to receive them.

131579968v1 0990433

**ANSWER:**   Defendant denies the allegations of paragraph 33.

## CLASS ALLEGATIONS

34.   **Class Definition:**   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> **Class**: All persons in the United States who received one or more text messages advertising the After School mobile application.

> **Illinois Subclass**: All members of the Class who reside in the State of Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:**   Defendant admits that Plaintiff purports to bring this claim on behalf of the described class and a subclass, but denies that Plaintiff has identified a legally cognizable class or subclass, that Plaintiff has a valid claim, and that Plaintiff can properly be a class representative of any legally cognizable class or subclass.  In further answer, the subclass no longer exists as the Court dismissed Count II.

35.   **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.  On information

15

and belief, Defendant has sent promotional text messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

**ANSWER:** Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 35.

36. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

**The Class:**

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant sent text messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

(c)    Whether Defendant systematically sent promotional text messages to persons who did not previously provide it with prior express consent to receive such text message calls; and

(d)    Whether Plaintiff and the members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**The Illinois Subclass:**

(a)    Whether Defendant systematically sent the promotional text messages to persons who did not previously provide it with prior express consent to receive such text message calls;

(b)    Whether Defendant's conduct violates the ICFA; and

(c)    Whether Plaintiff and the members of the Illinois Subclass are entitled to actual damages, attorneys' fees, and costs.

**ANSWER:** Defendant denies the allegations in paragraph 36 and its subparts. In further answer, the subclass no longer exists as the Court dismissed Count II.

16

37.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited text message calls.

**ANSWER:**    Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 37.

38.    **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

**ANSWER:**    Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 38.

39.    **Adequate Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff's claims are representative of the claims of the other members of the Class.  That is, Plaintiff and the Class members sustained damages as a result of Defendant's conduct and received substantially the same text messages. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to the Class.

17

131579968v1 0990433

**ANSWER:**    Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 39.

40.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's practices apply to and affect the members of the Class uniformly, and Plaintiffs challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**    Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 40.

41.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**ANSWER:**    Defendant denies that a class exists, denies that a class should be certified, and denies the remaining allegations contained in paragraph 41. In further answer, the Federal Rules of Civil Procedure and this Court will determine whether Plaintiff should be allowed to amend his complain.

131579968v1 0990433

### FIRST CAUSE OF ACTION

**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

42.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**     Defendant incorporates its responses to Paragraphs 1 through 42 as if fully restated herein.

43.     Defendant, without having prior express consent, sent text messages to Plaintiff and the other members of the Class.

**ANSWER:**     Defendant denies the allegations in paragraph 43.

44.     Defendant sent these text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, *en masse*, simultaneously and without human intervention.

**ANSWER:**     Defendant denies the allegations in paragraph 44.

45.     Defendant requires users of its After School App to select purported classmates under the guise of "Student Verification."  Defendant does not inform those users that the "identified students" will be contacted via text messages sent with an ATDS.  Nor does Defendant obtain the "identified students" consent prior to sending text messages, or require users to obtain intermediary consent on behalf of the "identified students."

**ANSWER:**     Defendant denies the allegations in paragraph 45.

46.     Moreover, Defendant does not let the mobile application user modify, review, or alter the content of the promotional text message.  Instead, Defendant alone has control over the content of the message, the number from which it is sent, and when the message are sent, if it all.

**ANSWER:**     Defendant denies the allegations in paragraph 46.

19

47. By sending text messages to cellular telephone numbers with an automated telephone dialing system and without prior express consent, Defendant violated 47 U.S.C. §227(b)(l )(A)(iii).

**ANSWER:** Defendant denies the allegations in paragraph 47.

48. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy thus causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), each are entitled to recover $500 in damages for each violation and an injunction requiring Defendant to stop its illegal text messaging campaign.

**ANSWER:** Defendant denies the allegations in paragraph 48.

49. To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

**ANSWER:** Defendant denies the allegations in paragraph 49.

Respectfully submitted on behalf of Defendant, ONE, INC.


*/s/ John P. Ryan*
David M. Schultz
Joel D. Bertocchi
John P. Ryan
Brandon S. Stein
HINSHAW & CULBERTSON, LLP
222 N. LaSalle, Suite #300
Chicago, IL 60601
Tel: 312-704-3000
jryan@hinshawlaw.com

20

131579968v1 0990433

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, I electronically filed or caused to be filed with the Clerk of the U.S. District Court, Northern District of Illinois Eastern Division, the foregoing **Answer to Plaintiff's Class Action Complaint** by using the CM/ECF system, which will electronically serve such filing(s) upon all counsel of record.


*/s/John P. Ryan*

21

131579968v1 0990433